UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH RYAN O/B/O
THOMAS RYAN (deceased),

    Plaintiff,

v.                                CASE NO: 8:08-CV-1011-T-EAJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under the Act.[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the decision of the ALJ in denying Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed an application for a period of disability and DIB on July 1, 1983, alleging a disability onset date of September 21, 1982. (T 16) The application was denied initially and not appealed. Id. Plaintiff filed a second application in March 1984, alleging the same disability onset date. Id. This application was denied initially and on reconsideration. Id. Following withdrawal of the request for hearing by Plaintiff, the ALJ issued an order of dismissal, and there was no further appeal. Id.

Plaintiff filed a third application on April 28, 1994, alleging a disability onset date of December 15, 1991. (T 16) On May 14, 1996, the Commissioner found that Plaintiff was disabled since December 15, 1991, and that he was entitled to DIB. Id. The Commissioner allowed Plaintiff

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

to reopen his July 1983 application, pursuant to the settlement agreement in Stieberger v. Sullivan, 801 F. Supp. 1079, 1080-81 (S.D.N.Y. 1992) (holding that qualified claimants of New York State are entitled to reopening of their unfavorable determination, and retroactive payment of benefits for those subsequently found disabled). Id. Upon reopening, the Commissioner denied the claim for reconsideration following a hearing decision on January 29, 2003. Id.

Plaintiff died on October 2, 2002, and his widow was substituted as a party. Id. The Appeals Council vacated the January 2003 decision and remanded the case because the decision cited an incorrect date last insured for entitlement to benefits and required consideration of a different period of time under the Stieberger guidelines. (T 17) After a new hearing on October 10, 2006, the ALJ issued a decision ruling Plaintiff was not disabled before December 15, 1991. (T 28) The Appeals Council denied review on March 20, 2008. (T 8) The hearing decision is now ripe for review under 42 U.S.C. § 405(g).

Plaintiff was 48 years old on the alleged disability onset date and a "younger individual" for purposes of the regulations. (T 17) During the relevant period at issue, Plaintiff reached age 50 (approaching advanced age) in 1984 and age 55 (advanced age) in 1989. (Id.) He completed the equivalent of a high school education and previously worked as a maintenance man for a public library in Brooklyn, New York. (Id.) Plaintiff alleged a disability due to fractures of the right wrist and foot with residuals, back pain, vision problems, angina, gastrointestinal distress, hypertension, diabetes mellitus, and depression. (Id.) In 2001, Plaintiff was found to have unresectable cancer of the pancreas which metastasized to the liver; he succumbed to this disease on October 2, 2002. (Id.)

To determine whether Plaintiff was disabled for the period between September 21, 1982 and

December 14, 1991, the ALJ performed the five-step evaluation established by the Social Security Administration ("Administration") under the Act. 20 C.F.R. § 404.1520(a). First, the ALJ determined that Plaintiff did not perform substantial gainful activity[3] between September 21, 1982 and March 1989. (T 19) However, the ALJ found that Plaintiff engaged in substantial gainful activity between March 1989 and December 1991, and therefore he was not disabled during this period. (Id.)

At the second step, the ALJ found that Plaintiff had severe impairments during the period at issue, which included the right wrist and heel fractures and residuals, longstanding hypertension, mild diabetes mellitus, mild obesity, and longstanding, post-traumatic partial visual loss in the right eye. (T 20) The ALJ concluded that those impairments were not listed or medically equivalent to those in the Listing of Impairments. Id. At the fourth step, the ALJ found Plaintiff had the residual functional capacity ("RFC") for light work activity. (T 26-27) In addition, the ALJ determined Plaintiff could not perform his past relevant work as a library maintenance man during the period at issue. (T 26)

The ALJ found, however, that Plaintiff was able to perform substantially a full range of light work activity. (T 26-27) Applying the Medical Vocational Guidelines ("grids"), the ALJ determined that Plaintiff was not disabled. (T 21, 23-26) In using the grids, the ALJ considered: (1) Plaintiff's RFC for light work; (2) that Plaintiff was both a younger individual and an individual closely approaching advanced age during the period at issue;[4] (3) that Plaintiff had a high school

---

[3]Substantial gainful activity is work activity that involves doing significant physical or mental activities, even if it is done on a part-time basis, or the individual gets paid less or has less responsibility than when he worked before. 20 C.F.R. § 404.1572(a).

[4] See Rules 202.21 and 202.14 located at 20 C.F.R., Part 404, Subpart P, Appendix 2, (2006).

4

education; and (4) Plaintiff's past work experience of semiskilled work. (T 26-27) The combination of these factors established that Plaintiff was not disabled between September 21, 1982 and March 1, 1989. (T 27) Plaintiff asserts that the ALJ erred by: (1) relying on the Medical-Vocational Guidelines in finding Plaintiff was not disabled, (2) failing to consider Plaintiff's limitations caused by his right wrist and foot injuries in determining that Plaintiff could perform a full range of light work, and (3) failing to give greater weight to Plaintiff's treating physician's opinion.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issue presented.

**II.**

Plaintiff contends that the Commissioner erred by relying on the grids to conclude that Plaintiff was not disabled (Dkt. 18 at 6-9). Plaintiff argues the ALJ's use of the grids was not appropriate because Plaintiff could not perform substantially all the requirements for light work (Dkt. 18 at 9). Specifically, Plaintiff alleges that his right wrist and right foot impairments prevented him from performing a full, or almost full, range of light work activity (Id. at 6-9). Plaintiff concludes that job availability should have been demonstrated by vocational expert ("VE") testimony (Id. at 9).

In a disability determination, an ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). A claimant has the initial burden of showing an impairment serious enough to prevent work in his or her previous job. Sryock v. Heckler, 764 F.2d 834, 835-36 (11th Cir. 1985). If this is met, the burden of proof shifts to the Secretary to establish that the claimant can perform other jobs that exist in significant numbers in the national economy, consistent with his age,

5

education, work experience, medical impairments, and residual functional capacity. Id. at 836.

The ALJ may use the grids instead of testimony from a vocational expert to determine whether jobs exist in the national economy that a claimant is able to perform. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "[I]t is only when the claimant can clearly do unlimited types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Marbury v. Sullivan, 957 F. 2d 837, 839 (11th Cir. 1992). The ALJ may not rely exclusively on the grids when either: (1) the claimant, due to exertional limitations, "is unable to perform the full range of work at a given residual functional level"; or (2) when "a claimant has non-exertional impairments that significantly limit basic work skills."[5] Id. The Eleventh Circuit has held that "significantly limit basic work skills" means that limitations "prohibit a claimant from performing 'a wide range' of work at a given work level." Id. at 1243.

Plaintiff contends that the exertional limitations caused by his right wrist and heel precluded reliance on the grids in lieu of VE testimony. The physical exertion requirements for light work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

---

[5]"Exertional limitations" are limitations on a person's ability to meet the seven strength demands: "sitting, standing, walking, lifting, carrying, pushing, and pulling" at the level required by the level of work at issue. Phillips, 357 F.3d at 1242 n.11. "Nonexertional limitations" affect a person's "ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands." Id.

6

unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567 (b).

The ALJ's determination of Plaintiff's RFC was consistent with a full range of light work activity. The ALJ found that the residual effects of Plaintiff's right wrist and foot injuries, combined with Plaintiff's other impairments, prevented Plaintiff from "lifting, carrying, pushing and pulling (with hands or feet) and handling items weighing more than twenty pounds occasionally and ten pounds frequently." (T 26) The ALJ noted that Plaintiff was not precluded from performing activities such as sitting, standing, walking or driving within the parameters of light work activity. Id. Furthermore, the ALJ determined Plaintiff was capable of occasional stair climbing, crouching, and crawling, but Plaintiff could not perform duties that frequently required unlimited, visual acuity with both eyes. Id. Taken as a whole, this RFC assessment demonstrates that Plaintiff could substantially perform a full range of light work activity.

According to Plaintiff, the exertional limitations that precluded him from performing a full range of light work activity were documented by his orthopedic surgeon, Altug Onor, M.D., ("Dr. Onor") (Dkt. 18 at 7). In a letter dated June 14, 1983, Dr. Onor stated there was swelling of Plaintiff's right heel and ankle prohibiting him from walking any distance and Plaintiff was unable to use his upper right extremity for any work at the time. (T 332) Dr. Onor opined that Plaintiff was to be considered permanently disabled from his usual work.[6] Id.

Although there is evidence in the record indicating Plaintiff's right wrist and foot limited his

---

[6] Dr. Onor concluded that Plaintiff was unable to perform his duties as a maintenance worker with the Brooklyn Public Library. (T 332) Plaintiff's duties as a maintenance worker required his "full physical capacity," including the ability to climb extension ladders, install heavy plumbing fittings, transport heavy equipment, and move heavy roofing materials. (T 333)

7

ability to work at some point during the period at issue, when taken as a whole the record contains substantial evidence to support the ALJ's finding that Plaintiff's impairments did not prevent him from performing a full range of light work during the period at issue. The ALJ determined the entire objective medical record did not support Dr. Onor's opinion. (T 23) The ALJ gave substantial weight to reports and opinions of Plaintiff's long-time treating physician, Rosa F. Carrera, M.D., ("Dr. Carrera"). (Id.)

A treating physician's opinion "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips, 357 F.3d at 1240 (citation omitted). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 1241. When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 F. App'x. 757, 759 (11th Cir. 2008) (unpublished); see generally 20 C.F.R. § 404.1527 (d).

The ALJ committed no reversible error in giving substantial or considerable weight to Dr. Carrera's opinion in lieu of Dr. Onor's opinion. The ALJ stated specific reasons for not giving Dr. Onor's opinion controlling weight in making a determination as to Plaintiff's ability to perform a full range of light work. These reasons are supported by substantial evidence. (T 21-24) First, the ALJ highlighted inconsistencies in Dr. Onor's letter regarding Plaintiff's functional limitations. For example, while Dr. Onor's letter stated Plaintiff was unable to perform his usual work permanently, the ALJ noted that Plaintiff's work at the time consisted of medium to heavy labor, not light work. (T 23) Further, the ALJ commented that lumbar x-rays during hospitalization showed only minimal

8

degenerative changes; the decreased motion of Plaintiff's wrist two weeks after surgery mentioned in Dr. Onor's letter did not appear unexpected. (T 23)

Next, the ALJ weighed the medical evidence in light of Plaintiff's allegations. Dr. Carrera, the physician primarily responsible for prescribing Plaintiff's medications, provided more medical evidence than any other physician. Dr. Carrera's records of evaluation, treatment, and lab studies span the period from 1972 to 1991. (T 23, 338-68, 388-94). The ALJ emphasized the lack of further medical reports after Dr. Onor's 1983 letter (T 332), weighing that fact against the other medical reports of Dr. Carrera. (T 23) Additionally, Dr. Carrera saw Plaintiff shortly after his accident and did not prescribe any pain medication other than Motrin which gave Plaintiff relief. (T 23, 350-51). Dr. Carrera's reports consistently show that each time Plaintiff complained of foot problems, he was effectively treated with Motrin. (T 23-24, 338, 343-44, 346, 348)

The ALJ also cited to Dr. Carrera's medical reports indicating that Plaintiff engaged in a wide range of physical activities during the period at issue, including walking, biking, golfing, and doing pushups. (T 342, 481-82) Quite properly, the ALJ stated that to perform these activities Plaintiff had to use both his right wrist and right foot. (T 24) Plaintiff's activities were confirmed by Plaintiff's widow at the October 2006 hearing. (T 481-82) The ALJ also found it significant that Dr. Carrera expressed no concern or doubt as to whether Plaintiff was performing these activities. (T 24) Further, Dr. Carrera did not report any right wrist complaints by Plaintiff; nor did Plaintiff mention complaints of foot pain or have pain medication prescribed between November 1988 and October 1991. (T 338-42) The ALJ had more than substantial evidence to conclude that Plaintiff's

9

exertional limitations did not compromise his capacity to perform light work.[7]

There is also substantial evidence to support the ALJ's finding that Plaintiff's non-exertional limitations did not preclude use of the grids. As discussed above, the ALJ determined that Plaintiff was capable of occasional stair climbing, crouching, crawling, and could not perform duties that frequently required unlimited, visual acuity with both eyes. (T 26) "Non-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level." Sryock, 764 F.2d at 836. The ALJ must "make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (citations omitted).

Here, the ALJ found that there was "little evidence of incapacitating or even significant pain or of significantly impaired function of the right wrist after surgery" and the evidence supported a finding that Plaintiff had the ability "to use the right hand and wrist for light exertion." (T 25) Dr. Onor noted an expected limitation of motion in Plaintiff's right wrist two weeks following surgery. There were no further reports from Dr. Onor after 1983 and Plaintiff never complained to Dr. Carrera about his right wrist. Similarly, the ALJ held the evidence demonstrated that Plaintiff had the "ability to use the right foot for light exertion." (T 25) Dr. Carrera's reports show that Plaintiff's right foot pain was adequately controlled by the use of Motrin, as opposed to more potent pain medications. The ALJ also concluded that Plaintiff's wrist and foot injuries did not

---

[7] Plaintiff also suggests that his work as a bank clerk on a part time basis from March 1989 to December 1991 did not demonstrate an ability to perform a full range of light work. However, the ALJ did not rely on this part time work but simply noted that Plaintiff returned to substantial gainful activity between March 1989 and December 1991 and was not eligible for a period of disability and DIB for that time period. (T 19-20)

compromise his ability to perform a wide range of light work based on Plaintiff's ability to engage in a wide range of physical activities (walking, biking, golfing, and doing pushups). Moreover, the ALJ determined that the longstanding, modest decrease in visual acuity of one of Plaintiff's eyes had no effect on his ability to maintain previous medium work, let alone light work activity.[8] Id. The ALJ compared visual examinations in February 1991 and February 1994 to support this finding. (T 25, 176-79, 394) Substantial evidence supports the ALJ's finding that Plaintiff's non-exertional limitations did not significantly limit his ability to perform light work.[9]

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is ORDERED that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 18th of September, 2009.

---

[8] In 1955, at the age of 21, Plaintiff sustained blunt trauma to his right eye. (T 394)

[9] Plaintiff also contends that the ALJ's previous RJC assessment was more limited that the one at issue in this appeal (Dkt. 18 at 7). Plaintiff's contention is without merit because the Appeals Council vacated that decision. (T 421-22) The case was remanded to the ALJ; therefore the prior decision on which Plaintiff relies is not binding. (T 421) Further, the Appeals Council remanded the case back to the ALJ in order to give further consideration to Plaintiff's maximum RFC during the entire period at issue. (T 422) As the ALJ determined this issue in the most recent decision and there is substantial evidence to support the ALJ's RFC determination, this argument is without merit.

/s/ Elizabeth A. Jenkins
ELIZABETH A JENKINS
United States Magistrate Judge